UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARLA S.,

                           Plaintiff,
           v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION
and
ORDER

19-CV-1283F
(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, and
                            SAMANTHA J. VENTURA, of Counsel
                            6000 North Bailey Avenue, Suite 1A
                            Amherst, New York  14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                  and
                            MARIA PIA FRAGASSI SANTANGELO
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza, Room 3904
                            New York, New York  10278

## JURISDICTION

     On October 14, 2020, the parties to this action, consented pursuant to 28 U.S.C.

§ 636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

the court on motions for judgment on the pleadings filed by Plaintiff on February 19, 2020 (Dkt. 9), and by Defendant on May 20, 2020 (Dkt. 12).

## BACKGROUND

Plaintiff Carla S. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on August 25, 2017, for Social Security Disability Benefits ("SSDI") under Title II of the Act, and for Supplemental Security Income ("SSI") under Title XVI of the Act (together, "disability benefits"). Plaintiff alleges she became disabled on June 15, 2015, based on bipolar disorder, depression, and an underactive thyroid. AR[2] at 15, 168, 197, 202. Plaintiff's application initially was denied on December 28, 2017, AR at 15, 77-108, and at Plaintiff's timely request, AR at 109-110, on July 31, 2018, a hearing was held in Buffalo, New York before administrative law judge Stephen Cordovani ("the ALJ"). AR at 36-76 ("administrative hearing"). Appearing and testifying at the administrative hearing were Plaintiff, represented by Nicholas DiVirgilio, Esq., and vocational expert Timothy P. Janikowski, Ph.D. ("the VE"), who appeared by telephone.

On September 26, 2018, the ALJ issued a decision denying Plaintiff's claims, AR at 12-35 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 165-67. On July 25, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final decision. On

---

[2] References to "AR" are to the CM/ECF-generated page numbers of the Administrative Record electronically filed by Defendant on December 16, 2019 (Dkt. 6).

September 20, 2019, Plaintiff commenced the instant action seeking review of the ALJ's Decision.

On February 19, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On May 20, 2020, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching The Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum").  Filed on June 10, 2020, was Plaintiff's Response to Commissioner's Brief in Response and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Carla S. ("Plaintiff"), born July 5, 1990, was 24 years old as of her alleged disability onset date ("DOD") of June 15, 2015, AR at 44, 168, 175, 197, 202, and 28 years old as of September 26, 2018, the date of the ALJ's decision.  AR at 30. Plaintiff has no children and lives by herself in an apartment.  AR at 41, 212.  Plaintiff attended high school in special education classes until the 11th grade, has not obtained a GED but completed training as a personal care aide in 2014.  AR at 44, 203. Plaintiff's past relevant work ("PRW") includes work as a personal care aide for a home

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

care agency, factory line worker, and as a ride attendant and in housekeeping at a local theme park.  AR at 204.  Plaintiff maintains she lost her personal care aide jobs because she was late to work, was unstable, and could not remember whether she gave clients their medications.  AR at 45, 47.

Plaintiff does not take care of any children or pets, but can tend to her own personal needs and grooming.  AR at 213-14.  Plaintiff prepares simple meals for herself on a daily basis, and does housework and yardwork at her home by herself, but slowly because of her mental impairments.  AR at 214-15.  Plaintiff does not have a driver's license, but relies on others for rides, walks or takes public transportation.  AR at 215.  Plaintiff grocery shops in stores, AR at 215, and can handle her finances except for counting change.  AR at 216.  Plaintiff enjoys attending basketball and football games, but rarely does so because her bipolar disorder, depression, and anxiety make it difficult for Plaintiff to be away from home and around other people.  AR at 216, 221.  Plaintiff avoids most social situations because of anxiety attacks.  AR at 61, 222.

It is undisputed that Plaintiff suffers from several mental health impairments including, as the ALJ found, AR at 18, bipolar II disorder, generalized anxiety disorder, intermittent explosive disorder, polysubstance abuse, and has borderline intellectual functioning.  From November 3, 2014 through September 6, 2017, Plaintiff received mental health treatment from Genesee County Mental Health Services ("GCMHS"), AR at 362-405, where she saw licensed clinical mental health social worker ("LMSW") Shannon Koch ("LMSW Koch"), LMSW Lisa Bonarigo ("LMSW Bonarigo"), and licensed mental health counselor ("LMHC") Abigail L. Heineman ("LMHC Heineman").  From August 7, 2017 to September 21, 2017, Plaintiff was treated at Batavia Recovery Center

for polysubstance abuse after she became involved in a physical altercation with her father's wife for which Plaintiff was arrested and spent the night in jail. AR at 419-65. Since August 18, 2011, Plaintiff also sought mental health treatment at A Place for Change where Plaintiff was treated by psychotherapist LCSW Joan M. Liggetto ("LCSW Liggetto"). AR at 466-68. In connection with her disability benefits applications, on October 25, 2017, Plaintiff underwent a psychiatric evaluation by consulting psychologist Yu-Ying Lin, Ph.D. ("Dr. Lin"), AR at 468-72, and an internal medicine evaluation by consulting physician Ingrid Wohlgemuth, M.D. ("Dr. Wohlgemuth"). AR at 473-78. On December 5, 2017, state agency review consultant psychologist T. Inman-Dundon, Ph.D. ("Dr. Inman-Dundon"), completed a consultative review of Plaintiff's medical record. AR at 79-94.

At the beginning of the July 31, 2018 administrative hearing, Plaintiff's counsel advised records from LCSW Liggetto who treated Plaintiff at A Place for Change had been requested, but not yet received. AR at 39-40. The ALJ stated he would hold the record open for one week, but in the absence of either the records or a letter explaining why the records had yet to be received, the ALJ would assume the documents were not available. AR at 40. Although the ALJ's decision was not issued until September 26, 2018, no further documents nor any letter of explanation were received from Plaintiff's attorney as the ALJ requested regarding the asserted missing records.

## DISCUSSION

1.  **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).   "Under this 'very

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

6

deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*., 523 Fed.Appx. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.     Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC"

which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

      In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through August 31, 2017, AR at 17, has not engaged in substantial gainful activity ("SGA") since June 15, 2015, her alleged disability onset date ("DOD"),[5] *id*., and suffers from the severe impairments of borderline intellectual functioning, bipolar II disorder, generalized anxiety disorder, intermittent explosive disorder, polysubstance

---

[5] The ALJ found Plaintiff's earnings from work performed after her alleged DOD do not meet the statutory threshold for SGA.  AR at 17.

8

abuse, obesity, and asthma, *id*., but that Plaintiff's diagnosed obstructive sleep apnea and underactive thyroid are medically managed, and Plaintiff's alleged knee pain is not supported by any objective medical findings such that Plaintiff's obstructive sleep apnea, underactive thyroid, and knee pain do not pose more than minimal limitations to Plaintiff's ability to engage in basic work activities and, as such, are non-severe conditions, *id*. at 18, and that Plaintiff does not have an impairment or combination of impairments, both severe and non-severe, meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 18-22. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with additional limitations of being able to frequently, as opposed to constantly, climb ramps and stairs, occasionally kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, never work at unprotected heights, must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, can understand, remember and carry out only simple instructions and tasks, must work in a low stress environment reflected by simple work, with no supervisory duties, no independent decision-making, no strict production quotas, and only minimal changes in work routine and processes, only occasionally interact with supervisors, only incidental or no interaction with coworkers and the general public, and cannot engage in team or tandem work.  AR at 22-28.  The ALJ also found Plaintiff cannot perform any PRW, but that given her RFC, age, limited education and ability to communicate in English, with transferability of skills not relevant, is able to perform other work existing in the national economy in significant numbers including as a machine packager, a laborer in stores, and a production helper.

AR at 28-29.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id*. at 29-30.

Plaintiff does not contest the ALJ's findings with regard to the first two steps of the five-step analysis, but argues that in analyzing Plaintiff's impairments at the third step, the ALJ erred in evaluating Dr. Lin's opinion, Plaintiff's Memorandum at 9-14, failed to properly develop the administrative record by failing to obtain records which Plaintiff's attorney advised at the administrative hearing had not then been obtained, *id*. at 14-17, and further erred by improperly relying on Dr. Inman-Dundon's opinion, such that at the fourth step, the RFC is not supported by substantial evidence in the record. *Id*. at 17-21.  In opposition, Defendant argues the ALJ fulfilled his obligation to develop the administrative record, Defendant's Memorandum at 16-20, and properly evaluated the medical source opinions of Drs. Lin and Inman-Dundon.  *Id*. at 20-30.  In reply, Plaintiff repeats his arguments that the ALJ erred in evaluating Dr. Lin's opinion, Plaintiff's Reply at 1-3, failed to properly develop the record, *id*. at 3-5, and improperly relied on the opinion of Dr. Inman-Dundon.  *Id*. at 5-6.  There is no merit to Plaintiff's arguments.

With regard to Plaintiff's argument that the ALJ failed to properly develop the record by failing to obtain the treatment records from LCSW Liggetto who treated Plaintiff at A Place for Change, Plaintiff's Memorandum at 14-17; Plaintiff's Reply at 3-5, the record establishes the ALJ's efforts to develop Plaintiff's complete medical history was reasonable as required by the relevant regulations.  "'Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ

10

generally has an affirmative obligation to develop the administrative record.'" *Munerlyn v. Colvin*, 203 F.Supp.3d 253, 263-64 (W.D.N.Y. 2016) (quoting *Ubiles v. Astrue*, 2012 WL 2572772, at *7 (W.D.N.Y. July 2, 2012)) (internal quotations omitted). "This duty to develop the record exists even when the claimant is represented by counsel." *Id.*, 203 F.Supp.3d at 264 (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The failure to properly develop the record can lead to remand where the record is inadequate to support denying benefits. *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999 (remanding where record was inadequate to support the denial of benefits). To discharge the duty to develop the record, the ALJ is required "to develop a complete medical history for at least the 12 months preceding the month in which plaintiff files her application." *Elizabeth S. v. Comm'r of Soc. Sec.*, 2021 WL 1054371, at * 4 (W.D.N.Y. Mar. 19, 2021) (bracketed material in original) (quotation marks and citations omitted). "An ALJ will make every reasonable effort to help plaintiff get medical reports from her own medical sources." *Id*. "Every reasonable effort" is defined in the regulations as "an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one follow up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1)) (bracketed material added). Further, "although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to prove she is disabled." *Elizabeth S.*, 2021 WL 1054371, at * 4 (citing 20 C.F.R. §§ 404.1512(a), 416.912(a)). This burden requires the plaintiff inform the SSA about, or submit all evidence known to her relating to whether or not the claimant is disabled. *Id*.

11

An ALJ does not fail to develop the record "where the claimant's counsel advises she is seeking the missing records, the ALJ keeps the administrative record open to allow for supplementation, but counsel never submits the additional records, and the claimant never requests the ALJ's assistance in obtaining the records." *Perry v. Saul*, 2020 WL 5544347, at * 5 (W.D.N.Y. Sept. 16, 2020) (finding ALJ did not fail to develop the record where, at the administrative hearing, the claimant's attorney advised of outstanding records she was trying to locate, the ALJ agreed to hold the record open to allow the attorney to submit the records, but the records were never submitted and the attorney never sought the ALJ's assistance in obtaining the records, "including requesting the ALJ exercise her authority pursuant to 20 C.F.R. § 405(d) to subpoena such records . . . .") (citing *Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. 2005)).  *See also Jerome M. v. Saul*, 2020 WL 7385468, at * 5 (W.D.N.Y. Dec. 15, 2020) (holding the ALJ properly presumed the administrative record was complete where, at the plaintiff's request made at the administrative hearing, the ALJ kept the record open for three weeks to allow the plaintiff to obtain and submit additional medical records, advising the ALJ would then make a decision unless the plaintiff requested another extension of time, yet neither the records nor an additional request to extend the period was received); *Myers ex rel. C.N. v. Astrue*, 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012) (holding ALJ fulfilled duty to develop record where, after granting a three-week extension, the plaintiff failed either to produce specific records, request another extension of time, or that the ALJ subpoena the records, yet other evidence was received that "could have led the ALJ reasonably to conclude that no further records were available or forthcoming").

Significantly, in the instant case, the agency complied with 20 C.F.R. §§ 404.1512(b)(1) and 416.912(b)(1) in requesting the records from LCSW Liggetto by first contacting LCSW Liggetto on September 20, 2017, seeking Plaintiff's treatment records for the relevant period, with a follow-up request made on September 30, 2017. AR at 339-44. Although no treatment records were received from LCSW Liggetto, on October 24, 2017, the agency received a letter report from LCSW Liggetto providing a narrative summary of Plaintiff's mental condition as well as mental health examination results and the letter report was admitted into the administrative record. AR at 466-67. Moreover, not only did Plaintiff's attorney not request the ALJ subpoena Plaintiff's treatment records from LCSW Liggetto, but at the administrative hearing, the ALJ, after stating he would wait one week for such records to be submitted, specifically advised Plaintiff's counsel that he "expect[s] the documents or a letter of explanation as to why I don't have the documents. In the event of neither, I'll assume there's no documents available." AR at 40. Accordingly, the ALJ fulfilled his duty with regard to obtaining records from LCSW Liggetto and no remand is required for further development of the record.

Nor did the ALJ err in weighing the opinions of Drs. Lin and Inman-Dundon, as Plaintiff argues. Plaintiff's Memorandum at 9-14; 17-21. As relevant, based on an October 25, 2017 consultative psychiatric examination, Dr. Lin's medical source statement included that Plaintiff has no limitations in her ability to understand, remember or apply simple directions and instructions, is mildly limited in sustaining an ordinary routine and regular attendance at work, being aware of normal hazards and taking appropriate precautions, is moderately limited in understanding, remembering, or

13

applying complex directions and instructions, and sustaining concentration and performing a task at a consistent pace, is moderately to markedly limited in adequately interacting with supervisors, coworkers, and the public, and is markedly limited in using reason and judgment to make work-related decisions, and in regulating emotions, controlling behavior, and maintaining well-being.  AR at 471.  Plaintiff also was able to maintain personal hygiene and appropriate attire without limitation.  *Id*.  Dr. Lin further stated that "[t]he results of the examination appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."  *Id*.  Plaintiff argues that despite giving "great weight" to Dr. Lin's opinion with regard to the areas in which the ALJ found Plaintiff had no limitation, a mild limitation, or a moderate limitation, the ALJ erred by discounting the "marked" limitations assessed by Dr. Lin, including in the areas of using reason and judgment, and regulating emotions, controlling behavior, and maintaining well-being, as well as that Plaintiff is "moderately to markedly limited in interacting with supervisors, coworkers, and the public."[6]  *Id*.  According to Plaintiff, the reasons the ALJ articulates for giving "little" weight to the marked limitations found by Dr. Lin are "illogical," which establishes the ALJ impermissibly "cherry-picked" the evidence by crediting information consistent with the ALJ's findings, but ignoring or discrediting information from the same source that does not support the ALJ's findings, without providing plausible reasons.  Plaintiff's Memorandum at 10-11 (citing *Strange v. Comm'r of Soc. Sec.*, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014)).  A careful review of the record, however, establishes the

---

[6] The court notes that if the ALJ found Plaintiff markedly limited in two of the mental functioning domains set forth in Listings, Plaintiff could meet the criteria for disability under Listing 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders).  20 C.F.R. Part 404, Subpt. P, App. 1.

ALJ's discounting of certain "marked" limitations found by Dr. Lin is supported by substantial evidence.

With regard to Plaintiff's social limitations and maintaining well-being, the ALJ found such findings are not supported by "the longitudinal record and based on a single one-time examination." AR at 28. In particular, Dr. Lin's determination that Plaintiff was moderately to markedly limited in terms of interacting adequately with supervisors, coworkers and the public is contradicted by evidence in the record indicating Plaintiff "has considerable social interaction including shopping at Wal-Mart and Save-A-Lot, obtaining transportation from her mother and sister, taking Medicaid transportation, traveling to Jamaica, and attending a weekly Bible study group." AR at 28. Similarly, Dr. Lin's finding that Plaintiff is markedly limited in maintaining her well-being "is belied by evidence in the record indicating that the claimant successfully lives alone and babysits and inconsistent with [Dr. Lin's] own medical source statement finding that the claimant is not limited in her ability to maintain personal hygiene and appropriate attire." *Id*. (bracketed material added). As Defendant argues, the ALJ further noted that Plaintiff's subjective reports of social anxiety and panic attacks in social situations are not supported by Plaintiff's medical records that fail to mention any underlying medical condition. AR at 26. This is consistent with Plaintiff's low scores on depression and anxiety assessments reported in connection with a mental health screening by counselors at Batavia Recovery Center on August 7, 2017. AR at 439-41. The ALJ further considered that Plaintiff's own statements during the hearing and recorded in her Function Report completed in connection with her disability benefits applications, as well as in medical reports, establish Plaintiff's ability to live on her own, travel to

15

appointments, care for others, and shop by herself, activities the ALJ found to be inconsistent with Plaintiff's asserted functional limitations based on social anxiety and panic attacks. AR at 26, 40-41, 43, 62-63, 212, 215, 389, 425, 444-45, 468, 470. The ALJ further considered the disputed findings of Dr. Lin as contradicted by the October 13, 2017 report of LCSW Liggetto, Plaintiff's counselor for at least ten years, that Plaintiff's memory and concentration are "grossly intact." AR at 26 (citing AR at 466). LCSW Liggetto further found Plaintiff "dressed appropriately and somewhat groomed, generally cooperative with examiner," and "[a]ble to give goal directed and coherent responses. No flight of ideas, no looseness of associates. No paranoia or delusions." AR at 466. LCSW Liggetto also assessed Plaintiff's insight and judgment as "fair." *Id*.

The ALJ's findings regarding Plaintiff's limitations are also corroborated by state agency consultant physician Dr. Inman-Dundon's medical evaluation, to which the ALJ gave "great weight," AR at 27, which is based on the totality of evidence including Dr. Lin's consultative psychiatric report and Plaintiff's treatment records from Batavia Recovery Center and Genesee County Mental Health Center, as well as LCSW Liggetto's letter report. AR at 85-87, 90-93. In considering Plaintiff's mental RFC ("MRFC"), Dr. Inman-Dundon analyzed Plaintiff with regard to 20 separate areas of mental functioning regarding Plaintiff's MRFC, finding Plaintiff "not significantly limited" in eight areas and "moderately limited" in 12 areas. AR at 90-92. Based on this evaluation of Plaintiff's medical records, Dr. Inman-Dundon opined Plaintiffs "retains ability for low contact, simple work. Her ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. Similarly, her ability to respond appropriately to supervision would be reduced but

adequate to handle ordinary levels of supervision in the customary work setting." AR at 85.

Insofar as Dr. Lin's medical source statement is inconsistent with Dr. Inman-Dundon's opinion, the Second Circuit will "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122 (2d Cir. 2012). Further, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Furthermore, the relevant regulations require ALJs consider the opinions of state agency consultants because they are highly qualified experts in Social Security disability evaluations. 20 C.F.R. §§ 404.1513a(b)(1), 404.1527(c) and (e). Based on these same criteria, the opinions of such non-examining sources can constitute substantial evidence in support of an ALJ's decision. *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's decision that Plaintiff is not disabled under the Act. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault*, 683 F.3d at 448 (italics in original)). Indeed, the

17

issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics in original).  Despite the possibility of an alternate interpretation, in this case, the record provides substantial evidence to sustain the ALJ's decision.

Accordingly, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  March 24th, 2021
        Buffalo, New York